UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

Jesse J.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-05281-RMI

**ORDER RESOLVING SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 15, 18

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that he was not disabled under Titles II and XVI of the Social Security Act. *See* Admin. Rec. ("AR") at 14.[2] The Social Security Administration's Appeals Council declined to review the ALJ's decision. *Id.* 1. As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, reviewable by this court. 42 U.S.C. § 405(g). Both parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 8, 10. And both have filed briefs. Dkt. Nos. 15, 18, 19.

For the reasons stated below, the decision of the ALJ is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Order.

## I. FACTS & BACKGROUND

Plaintiff applied for Title II disability insurance benefits on May 31, 2019, and for Title XIV supplemental security income on December 4, 2019. AR at 142–43. He alleges physical and

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #12. *See* Dkts. 12-1 through 12-9.

United States District Court
Northern District of California

mental disability due to a foot condition, lower-body pain, paranoia, anxiety, schizophrenia, posttraumatic stress disorder, and a history of drug use. His applications were denied on October 9, 2020. AR at 177. His reconsideration request was denied on June 8, 2021. AR at 192. Hearings before the ALJ were held on June 8, 2023, December 5, 2023, and June 6, 2024. AR at 17.

At the June 6, 2024, hearing, Plaintiff appeared along with counsel and testified. AR at 41. Regarding his physical health, he testified about lower body pain in his feet, knees, and hips. He was born with flat feet, which has progressively worsened over time, and which makes it difficult to walk or stand. AR at 60–63. For instance, he typically must be driven to the grocery store by a friend because it is too painful to walk or bike, even though the store is only a couple of blocks away. AR at 50–52. Additionally, even when he is standing, he cannot stay in one spot because moving helps relieve some pressure. AR at 61.

Regarding his mental health, Plaintiff testified about his long history of anxiety and paranoia. He hears things that are not there and believes people are plotting against him to cause him harm. AR at 55. He suffers from severe anxiety based on traumatic incidents from childhood, which also cause him to not trust new people or situations. AR at 55–57. Living in communal housing is difficult for him because of anxiety from having to interact with many people, and he left his previous housing situation for this reason. AR at 49–50, 58–59. Lastly, he deals with mental health symptoms from many years of drug and alcohol use. AR at 63.

A vocational expert ("VE") also testified at the hearing. AR at 69. Based on the ALJ's hypotheticals, the VE testified that Plaintiff could perform light work jobs such as small parts assembler, price marker, and cafeteria attendant. AR at 70.

The ALJ issued his decision on June 24, 2024, which determined that Plaintiff was not disabled under the Social Security Act. AR at 14. The ALJ performed the required five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). Here, the ALJ determined that Plaintiff has

not engaged in substantial gainful activity since January 1, 2018, the alleged onset date. AR at 20.[3]

At step two, the ALJ determines whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ determined that Plaintiff has the following severe impairments: post-traumatic stress disorder, polysubstance abuse, anxiety disorder, major depressive disorder, congenital pes planus, tendonitis of the feet, and patellofemoral chondromalacia of the left knee. AR at 20.

At step three, the ALJ determines whether the severity of claimant's impairment or combination of impairments meets or medically equals the criteria of any listed impairments. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). Here, the ALJ determined that Plaintiff's impairments do not meet or medically equal a listed impairment. AR at 20. The ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. AR at 21–22.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC") to still perform past relevant work. The RFC describes what the claimant can still do despite his physical, mental, and other limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the ALJ

---

[3] In the ALJ's step one analysis, he wrote,

> [w]hile there is evidence that the claimant has engaged in some work activity since the alleged onset date [of January 1, 2018], it is not necessary to determine whether that work activity constitutes disqualifying substantial gainful activity because, even assuming that it was not substantial gainful activity, there exists a valid basis for denying the claimant's application, as explained in the remainder of this decision.

AR 20. It is unlikely that Plaintiff's work activity after January 1, 2018, would be disqualifying on remand, and more factual development would be needed to make such a determination. Plaintiff's last employment was as a laborer at a recycling facility from June 2018 to October 2018. AR at 596. While Plaintiff was presumably paid for this work, "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of SSA*, 172 F.3d 690, 694 (9th Cir. 1999). Plaintiff testified that he struggled to keep this job for more than a few months because of his feet pain and because of complications of being homeless at that time. AR at 65–66. More testimony would be needed regarding the substantiality of the work activity based on the factors at 20 C.F.R. §§ 404.1573, 416.973 to find that such work is disqualifying.

United States District Court
Northern District of California

determined that Plaintiff had the RFC to perform light work with the limitation that he can only occasionally operate foot controls with the bilateral lower extremities. AR at 22. The ALJ found that Plaintiff (1) can occasionally stoop, kneel, crouch, and crawl; (2) can occasionally climb ramps and stairs and can occasionally climb ladders, ropes, or scaffolds; and (3) can never work in an area that has concentrated exposure to extreme heat, cold, humidity, or wetness. AR at 22. Regarding mental limitations, the ALJ found that Plaintiff (1) can understand, remember, and carry out simple instructions in the workplace; (2) can work in a low stress job; (3) can perform repetitive work, but not work requiring a specific production rate; and (4) can have no more than occasional interaction with supervisors, coworkers, and the general public. AR at 22. Furthermore, the ALJ determined that Plaintiff has no past relevant work experience. AR at 29.

At step five, the ALJ determines whether the claimant can engage in other types of substantial gainful work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Here, based on the VE's testimony, the ALJ determined that Plaintiff can perform light work jobs such as small parts assembler, price marker, and cafeteria attendant. AR at 29–30. As such, the ALJ found Plaintiff to not be disabled.

Plaintiff appeals.

## II. LEGAL STANDARD

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir.

1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## III. ANALYSIS

### A. Errors in the RFC Formulation

Plaintiff asserts error in the RFC's formulation as to the ALJ's evaluation of daily functioning, his rejection of Plaintiff's testimony, and his evaluation of the medical opinions of record.

#### 1. Evidence of Daily Functioning

Plaintiff appears to argue that the ALJ erred at the step four RFC determination in the analysis of Plaintiff's mental limitations by failing to address evidence that contradicts the ALJ's conclusion and by misevaluating the evidence of strengths in Plaintiff's daily functioning. Pl.'s Mot. 4–6, Dkt. No. 15; AR at 20–22. Specifically, Plaintiff alleges that the ALJ "cherry-picked" evidence without addressing contradictory evidence and did not explain how evidence of Plaintiff's higher functional level in structured medical environments and activities of daily living translates to a workplace environment. *Id.*

First, the ALJ did not cherry-pick evidence and fail to include contradictory evidence. While an ALJ "may not cherry-pick and rely on portions of the medical record which bolster his findings," *Goodman v. Berryhill*, No. 16-CV-02678-JSC, 2017 WL 1365122, at *10 (N.D. Cal. Apr. 14, 2017), here, the ALJ's decision mentions both evidence that supports and contradicts his findings regarding the severity of Plaintiff's mental impairments. *See* AR at 21–22. For instance, in determining that Plaintiff has a moderate limitation in interacting with others, the ALJ referenced evidence that Plaintiff lives in communal housing and is "able to use public

transportation, shop in stores, and [] attend[] church." AR at 21. This same paragraph, though, also notes that Plaintiff testified "that he has anxiety[;] that he does not trust or open up to a lot of people . . . [; and] that he experiences hallucinations, which include people talking about or plotting against him." AR at 21. The ALJ similarly addressed supporting and contradictory evidence in determining the severity of Plaintiff's other limitations.

Second, the ALJ failed to explain how the evidence of Plaintiff's higher functional abilities in structured medical settings and daily life activities is transferable to more stressful work environments. Numerous courts in the Ninth Circuit have recognized that evidence of a claimant's higher functioning in medical settings and home activities is not necessarily probative of the claimant's functioning capacity in new and stressful workplace environments and social interactions. In *T.N. v. Kijakazi*, the court found that "the fact that, in a structured clinical environment, with a trained mental health professional, [p]laintiff was able to make good eye contact, was cooperative, and put forth adequate effort on testing" does not mean "that [p]laintiff would be able to interact appropriately with coworkers and supervisors in the entirely different context of a full-time mandatory work environment." No. 20-CV-04946-TSH, 2021 WL 4553581, at *9 (N.D. Cal. Oct. 5, 2021); *see also L.M. v. Kijakazi*, No. 22-CV-04729-VKD, 2023 WL 6308073, at *13 (N.D. Cal. Sep. 27, 2023) (collecting cases). Similarly, in *Fair v. Bowen*, the Ninth Circuit stated that "many home activities are not easily transferable to what may be the more grueling environment of the workplace . . . ." 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The Social Security Administration's regulations provide further support. The regulations state that the ALJ will evaluate the claimant's "daily functioning" as it relates to the claimant's ability "to use the four areas of mental functioning *in a work setting*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F.3.c. (emphasis added).

Here, the ALJ's discussion of the severity of Plaintiff's mental impairments contains minimal explanation for why the ALJ weighed or interpreted certain evidence as he did. For example, in determining that Plaintiff has a moderate limitation in interacting with others, the ALJ mentioned that Plaintiff uses public transportation, shops in stores, and during medical examinations, "exhibited both [] anxious mood and irritable affect, as well as calm and

cooperative behavior and polite behavior." AR at 21. Likewise, in determining that Plaintiff has a moderate limitation in concentrating, the ALJ identified that Plaintiff "reported that he enjoyed reading and watching television," and during medical examinations, "exhibited both impaired attention and concentration and restless behavior, as well as normal concentration and fair attention." AR at 21. Nowhere does the ALJ describe or explain how Plaintiff's ability to engage in these daily tasks or participate in medical examinations demonstrates higher functional capacities in the workplace.

In sum, even though the ALJ mentioned supporting and contradictory evidence in his mental impairment analysis, he failed to explain how the evidence of Plaintiff's daily functioning supported his findings as to the severity of Plaintiff's mental functions in a workplace setting.

**2. Claimant's Testimony**

Plaintiff next argues that the ALJ erred at step four in his RFC determination by improperly discrediting Plaintiff's testimony regarding his physical and mental health issues. Pl.'s Mot. 6–8, 10–12. The Commissioner argues that the ALJ identified inconsistencies between Plaintiff's testimony and the medical providers sufficient to support the ALJ's determination. Def.'s Opp'n 2–4, Dkt. No. 18.

"[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation modified).

Here, the ALJ did not identify with the requisite specificity the parts of the claimant's

testimony that he found not credible and the evidence that contradicted the testimony.[4] As such, this court cannot engage in meaningful judicial review, and further proceedings are necessary.

Following the boilerplate introductory remark, the ALJ's discussion of Plaintiff's physical and mental impairments contains "a relatively detailed overview of [Plaintiff's] medical history." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). But providing a medical summary without any explanation as to *which* pieces of Plaintiff's testimony are not credible and *which* pieces of specific evidence contradicts that testimony is insufficient to allow this court to review the ALJ's determinations. *Id.* at 1277 (holding that the ALJ needed to "identify what parts of the claimant's testimony were not credible and why") (citation modified); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155 (9th Cir. 2008) (rejecting a specific portion of the plaintiff's testimony "that he can lift only 10 pounds occasionally" only after specifically referencing a doctor's "contradictory opinion that he can lift up to 10 pounds frequently"). Additionally, the Commissioner's brief invites the court to gap-fill the ALJ's reasoning by proposing specific medical evidence that tends to contradict specific portions of Plaintiff's testimony. *See* Def.'s Opp'n 2–4. However, judicial review is "constrained to [] the reasons the ALJ asserts." *See* 980 F.3d at 1278 (citation omitted). The ALJ makes no such specific references to Plaintiff's testimony or the specific medical evidence that resulted in the ALJ's adverse credibility finding of Plaintiff's testimony. *See* AR at 23–25.

In sum, the ALJ's RFC analysis fails to explain why it discredits Plaintiff's testimony.

**3. Medical Opinions**

Plaintiff then argues that the ALJ erred at step four in his RFC determination by improperly evaluating the medical opinions in the record, particularly by failing to adequately explain why he found the opinions of Plaintiff's treating providers Sam Kessel, ASW and Wale Adeniji, NP to not be persuasive. Pl.'s Mot. 8–12. The Commissioner argues that the ALJ properly discredited Plaintiff's treatment providers because (1) those opinions were on a "check box form"

[4] The ALJ's decision mentions both evidence that supports and contradicts his conclusions regarding the claimant's testimony, *see* AR 23–24, so it cannot be said that the ALJ cherry-picked the record and failed to even acknowledge evidence that supports the claimant's testimony. *See* Pl.'s Mot. 6–8.

and lacked explanation and (2) conflicted with other medical opinions. Def.'s Opp'n 4–6.

The ALJ must articulate the persuasiveness of all the medical opinions in the case record, based on factors set forth in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)).

Here, the ALJ's reasons for rejecting the opinion of Sam Kessel, ASW and Wale Adeniji, NP are not supported by substantial evidence. The ALJ found the opinion of ASW Kessel and NP Adeniji unpersuasive because the opinion (1) "was provided on a primarily check box form that [sic] and the degree of limitation opined is not supported"; and (2) "[was] not consistent with the degree of limitation opined" based on "the claimant's normal and abnormal mental status examination findings; his conservative treatment and positive response to medication; his subjective complaints; and his activities of daily living." AR at 27.

However, the fact that the ASW Kessel and NP Adeniji opinion was primarily "a check-box questionnaire is not a proper basis to reject an opinion that is supported by treatment records." *Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1145 (E.D. Wash. 2022) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014)). Here, the ASW Kessel and NP Adeniji opinion is a check box form, but it also contains four handwritten responses to support the check box selections. AR 1872–76. For example, in response to question twelve, ASW Kessel and NP Adeniji write: "Patient has struggled to maintain social relationships and describes constant conflict with roommates and other family members. Patient has been observed struggling to maintain regular therapy appointments consistently. Patient struggles to adapt and adjust to unfamiliar environments and or social expectations." AR at 1875. While the first sentence appears based on "self-reported symptoms," the rest appears based on "objective evidence" because of the "has been observed" language. *Jeanette R.*, 620 F. Supp. 3d at 1145; *see* AR at 1875. Furthermore, the fact that ASW Kessel and NP Adeniji were Plaintiff's treatment providers at LifeLong Medical Care—and had years of appointments from which to base their responses—provides additional objective evidence to support their opinion. *See* AR at 1867–69.

Additionally, the ALJ's rationale that the RFC is supported by Plaintiff's "conservative treatment" is legally incorrect. Numerous courts in this circuit have held that "[t]reatment of mental conditions with antidepressants or psychotics is not considered 'conservative'" precisely because "administering medications [to treat mental health] can alter behavior." *M. R. v. SSA Comm'r*, No. 25-CV-04832-EMC, 2026 WL 594155, at *6 (N.D. Cal. Mar. 3, 2026); *Baker v. Astrue*, No. ED CV 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010). Here, Dr. Stafford's medical opinion, which the Commissioner's brief cites in support of the ALJ's decision to discredit the ASW Kessel and NP Adeniji opinion, *see* Def.'s Opp'n 4–6, lists Plaintiff's current medications as of February 2024. AR 1892–93. Among those medications are: Abilify [antipsychotic]; Fluoxetine [antidepressant]; Naloxone [opioid analgesic]; and Trazodone [antidepressant]. AR at 1893; 3 ATT'YS MED. DESKBOOK § 40:4. Dr. Stafford's report also mentions one suicide attempt and ten psychiatric hospitalizations. AR at 1893. Plaintiff's mental health history and the medications prescribed to treat his symptoms are not conservative, so this cannot be a reason to discredit the ASW Kessel and NP Adeniji opinion, nor any other medical opinion evaluating Plaintiff's mental health,[5] in formulating the RFC. The rationales provided by the ALJ for discrediting the ASW Kessel and NP Adeniji are not based on substantial evidence.

In sum, the ALJ erred at step four in his analysis of (1) Plaintiff's daily functioning activities, (2) the credibility of Plaintiff's testimony, and (3) the medical opinions concerning Plaintiff's mental health. These legal errors resulted in an RFC that is not "based on all the relevant evidence in the case record" and does not contain "a thorough discussion and analysis of the objective medical and other evidence." *Laborin v. Berryhill*, 867 F.3d at 1153 (9th Cir. 2017) (citation modified).

**B. Errors in the VE Testimony**

Lastly, Plaintiff argues that the ALJ erred at step five by failing to address VE testimony that contradicts the ALJ's finding that Plaintiff could perform light work jobs. Pl.'s Mot. 12. The Commissioner's brief does not respond to this argument.

[5] "Conservative treatment" is cursorily mentioned in each of the ALJ's paragraphs evaluating the medical opinions in the record. *See* AR 27–28.

At step five, the ALJ determines whether the claimant can engage in other types of substantial gainful work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). If there is a significant number of available jobs that the claimant could perform, then the claimant is not disabled. *See id.* §§ 404.1566, 416.966. If not, then the claimant is disabled. The ALJ can meet his burden by asking hypotheticals to a VE, and the hypotheticals must include all the claimant's physical and mental limitations supported by substantial evidence. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989).

The ALJ improperly relied on the VE testimony because the ALJ's hypotheticals were based on a flawed RFC determination and analysis, as described herein, which provides independent grounds for finding a step five error. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the VE's opinion has no evidentiary value."). The ALJ erred at step five by questioning the VE based on a flawed RFC.

**C. Remedy**

Having identified legal errors in the ALJ's decision, the court must now determine the appropriate remedy. Plaintiff seeks an order reversing the ALJ's decision and remanding for the payment of benefits, or alternatively, a remand for further administrative proceedings. Pl.'s Mot. 13.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The ALJ's decision will not be reversed for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). While "[t]he decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court," the district court may not remand for the payment of benefits "[u]nless the district court concludes that further administrative proceedings would serve no useful purpose." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (amended Feb. 5, 2016).

Here, the appropriate remedy is a remand for further proceedings because of uncertainties

United States District Court
Northern District of California

and ambiguities in the record. Importantly, the errors discussed herein were not harmless because they prevented the ALJ from properly constructing the RFC and from basing his disability determination on substantial evidence. Remand for further proceedings, as opposed to an immediate award of benefits, is proper because the record contains numerous factual inconsistencies, which the ALJ's decision recognizes but fails to reconcile or explain. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (stating the rule that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for further proceedings") (citation modified).

**IV. CONCLUSION**

For the reasons stated above, the decision of the ALJ is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 23, 2026

ROBERT M. ILLMAN
United States Magistrate Judge